**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

RONALD GRAHAM,           )
                                 )
               Petitioner,   )   **CIVIL ACTION**
                                 )
v.                              )   No. 06-3176-MLB
                               )
DAVE MCKUNE,           )
                               )
               Respondent.   )

_____

**MEMORANDUM AND ORDER**

## I.   INTRODUCTION

This case comes before the court on petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction in Kansas case number 99-CR-191. (Doc. 1.) The matter has been fully briefed and is ripe for decision. (Docs. 2, 10, 12.) The application is DENIED for the reasons set forth herein.

Petitioner was convicted of possession of methamphetamine and possession of marijuana following a bench trial in the District Court of Geary County, Kansas. He was sentenced to 150 months in prison on the possession of methamphetamine count (to run consecutive to a prior conviction in case number 86-CR-717) and 11 months in prison on the possession of marijuana count (to run concurrently). In a federal habeas proceeding, the state court's factual findings are presumed correct and petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). He has failed to do so. Accordingly, the court incorporates the Kansas Supreme Court's version of the facts:

Ronald Graham was convicted after a bench trial

of one count of possession of methamphetamine and one count of possession of marijuana.  Based on evidence of two prior convictions, the district court found that Graham's otherwise severity level 4 crimes became severity level 1 crimes under K.S.A. 2001 Supp. 65-4160(c).  Combined with Graham's criminal history score of "H," he received a presumptive sentence of 150 months. Graham now appeals his convictions and sentence.

. . .

Graham is no stranger to this court.  A background review will be helpful in linking the facts of his current arrest and conviction with the issues. Graham's original convictions [in case number 86-CR-717] of possession of methamphetamine, possession of marijuana, and possession of cocaine were affirmed in State v. Graham, 244 Kan. 194, 768 P.2d 259 (1989).  His sentence was later commuted to 15 years to life by Governor Joan Finney.  In 1998, because of a K.S.A. 60-1507 action that alleged ineffective counsel, we reversed and remanded for resentencing.  See Graham v. State, 263 Kan. 742, 952 P.2d 1266 (1998).

Graham had served 10 years of his original sentence and was resentenced for possession of cocaine, a class B felony.  The sentence for a class B felony committed in 1989 was a minimum term of 5 to 15 years and a maximum term of 20 years to life.  K.S.A. 21-4501(b) (Ensley).  The district judge imposed a 15-year to life sentence.  After resentencing, the district court suspended imposition of the sentence and placed Graham on 1 year of probation, supervised by court services.  Later, the district court, after finding that Graham had violated the terms of his probation, revoked probation.  The district court's decision was affirmed in State v. Graham, 272 Kan. 2, 30 P.3d 310 (2001).

We now move forward to the facts behind this fourth appeal.  On February 8, 1999, during his probationary period, Graham appeared in Geary County District Court on a motion to suppress in an unrelated case.  Sergeant Mike Life of the Junction City Police Drug Task Force was in the courtroom.  At the time of the hearing, Sergeant Life knew that Graham had an outstanding warrant for a probation violation.  The warrant had been outstanding since November 1998. Due to "safety"

-2-

and "investigative concerns," the sergeant decided not to serve the warrant until Graham could be stopped in a controlled setting.

After Graham and two female companions, Cindy Tucker and Tammy Taylor, left the hearing, the Junction City Police Department stopped Graham's car. Graham, who was seated in the front passenger seat, was placed under arrest on a probation violation warrant for unlawful drug use.

Sergeant Life searched Graham's car incident to his arrest. The sergeant testified that he could see what he believed to be marijuana in plain view on the front passenger floorboard when Graham was removed from the front passenger seat. While standing outside Graham's car, the sergeant was able to distinguish the marijuana fairly easily as the carpet in the car was black. As he moved closer to the suspected marijuana, the sergeant noticed more marijuana in the car and detected the odor of burnt marijuana.

Graham's car was seized and transported to the police station for a thorough search. The officers found a small amount of methamphetamine in a pair of men's shorts in the trunk. They also found a jacket containing Graham's identification and more marijuana. A pack of rolling papers was found in the glove box.

Graham filed a motion to suppress the evidence seized from his car. At the suppression hearing, Sergeant Life testified that he had two reasons for arresting Graham outside the courthouse: (1) concern for the safety of the officers and the general public, and (2) the opportunity to search Graham's vehicle incident to an arrest. The district court (1) rejected the State's claim that the delay in serving the arrest warrant served any safety purpose, (2) found that serving the arrest warrant did not, by itself, justify a search of Graham's car, and (3) denied the motion to suppress based on a finding that the marijuana on the floorboard was in plain view.

Graham's court-appointed defense attorney, at Graham's request, filed a motion to withdraw as counsel. Graham also waived his right to a jury trial. The district court granted the motions, and the withdrawing attorney assisted Graham as advisory counsel during the bench trial. At

-3-

sentencing, the district court denied Graham's
motion for a downward dispositional or downward
durational departure.

State v. Graham, 273 Kan. 844, 844-47, 46 P.3d 1177, 1179-80 (2002).
The Kansas Supreme Court affirmed petitioner's conviction.  Id. at
845, 46 P.3d at 1179.  Thereafter, petitioner sought post-conviction
relief under K.S.A. § 60-1507.  The state district court denied
relief, the Kansas Court of Appeals affirmed, and the state supreme
court denied review.  Graham v. State, No. 94,007 (Kan. Ct. App. Mar.
10, 2006).

Having failed at every turn, petitioner now turns to the federal
courts seeking review of his conviction in case number 99-CR-191.[1]

---

[1]  The court notes there have been multiple habeas corpus
applications under § 2254 by this petitioner.  On June 28, 2006,
petitioner filed in the United States District Court for the District
of Kansas two petitions for a writ of habeas corpus.  The petition now
before this court was assigned case number 06-3176-MLB.  The second
petition was assigned case number 06-3177-SAC.
     In a handwritten note accompanying both petitions, petitioner
stated:

          Dear Clerk:
               Enclosed please find a check for $10.00 (ten
          dollars) to cover filing fees of $5.00 for filing
          challenges to 86-CR-717 and $5.00 for filing fees
          challenging 99-CR-191.
               To assist you I have placed rubber bands
          around each 2254 motion with memorandum and
          exhibits.  There are 2 separate cases (1)
          original and (2) copies challenging state
          conviction in case No. 86-CR-717 and (1) original
          and (2) copies challenging state conviction in
          case No. 99-CR-191. . . .

It seems clear petitioner intended that what became case number 06-
3177-SAC was to be a challenge to his conviction in a separate Kansas
case, case number 86-CR-717 (this Kansas case is discussed more fully
within the Memorandum and Order).  Petitioner raised two claims in
case number 06-3177-SAC.
     Judge Crow was assigned case number 06-3177-SAC.  Believing case
number 06-3177-SAC was a second/successive petition to previously
filed habeas petitions regarding Kansas case number 86-CR-717, Judge

Crow transferred the petition to the Tenth Circuit pursuant to 28 U.S.C. § 2244(b)(3). The Tenth Circuit, in an order filed August 16, 2006, denied petitioner leave to file a second or successive habeas petition with regard to petitioner's first claim in case number 06-3177-SAC and transferred the petition back to Judge Crow with instructions to accept for filing the second claim. (The second claim challenges the sentence petitioner received in Kansas case number 86-CR-717 after remand for resentencing by the Kansas Supreme Court in 1998.) See Graham v. McKune, No. 06-3254 (10th Cir. Aug. 16, 2006).

The court notes that the two 2006 habeas petitions are not petitioner's first brush with the habeas process. For clarification purposes, the court relates the following history of petitioner's filings in federal court:

- Case number 94-3215, filed May 24, 1994 (Petitioner's first federal habeas petition challenging his Kansas conviction in case number 86-CR-717. Denial of the writ was ultimately affirmed by the Tenth Circuit in Graham v. Hannigan, No. 95-3024 (10th Cir. Apr. 27, 1995).);

- Case number 99-3156, filed May 04, 1999 (Petitioner's second federal habeas petition challenging his Kansas conviction in case number 86-CR-717. Transferred to Tenth Circuit as a second/successive petition under 28 U.S.C. § 2244(b)(3).);

- Case number 03-3265, filed June 23, 2003 (Petitioner's challenge of his resentencing in Kansas case number 86-CR-717. Dismissed without prejudice so petitioner could exhaust his claim.);

- Case number 06-3176-MLB, filed June 28, 2006 (Petitioner's first federal habeas petition challenging his Kansas conviction in case number 99-CR-191 and the subject of this Memorandum and Order.);

- Case number 06-3177-SAC, filed June 28, 2006 (discussed above in this footnote).

Respondent does not address these previous petitions or the current status of petitioner's detention.

Regardless, it appears that this is petitioner's first federal habeas petition challenging Kansas case number 99-CR-191 and petitioner is "in custody pursuant to the judgment of a State court" on Kansas case number 99-CR-191. See 28 U.S.C. § 2254(a). In a supplement to his supporting memorandum, petitioner states:

> After drafting and obtaining copies of this action Mr. Graham was notified that parole was granted in case no. 86-CR-717 and he began service of sentence in case 99-CR-191 on June 1, 2006. After serving the 150-month sentence

-5-

Nonetheless, this court's ability to consider collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the highly deferential standard set forth in AEDPA, if petitioner's claim has been decided on the merits in a state court, a federal habeas court may only grant relief under two circumstances: 1) if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or 2) if the state court decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2).

> A state court decision is "contrary to" Supreme Court precedent in two circumstances: (1) when "the state court applies a rule that contradicts the governing law set forth in [the Court's] cases"; or (2) when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from" that reached by the Court. Williams v. Taylor, 529 U.S. 362, 406, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision constitutes an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the

---

> imposed in case no. 99-CR-191, Mr. Graham will be placed back upon a LIFE sentence of parole in case no. 86-CR-717.

(Doc. 2.) Therefore, petitioner's application for a writ of habeas corpus for his conviction and detention in Kansas case number 99-CR-191 is correctly before this court for review. See Foster v. Booher, 296 F.3d 947 (10th Cir. 2002) (stating requirements for finding a petitioner is "in custody" for habeas purposes).

-6-

prisoner's case." Id. at 413, 120 S. Ct. 1495. Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411, 120 S. Ct. 1495; see also Thomas v. Gibson, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing Williams).

Finally, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings. See 28 U.S.C. § 2254(e)(1); Smith v. Mullin, 379 F.3d 919, 924-25 (10th Cir. 2004).

Hamilton v. Mullin, 436 F.3d 1181, 1186 (10th Cir. 2006). An inherent limitation to review under § 2254 is that a habeas court will only consider alleged violations of federal law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Moreover, the court will not normally consider federal questions unless they have first been presented to the state courts. Picard v. Connor, 404 U.S. 270, 277-78 (1971); but see 28 U.S.C. § 2254(b)(2) (permitting denial on the merits, despite failure to exhaust state remedies).

## II. ANALYSIS

A. EXHAUSTION OF STATE REMEDIES

Where, as here, the state provides an effective means to correct alleged errors in a petitioner's state criminal proceedings, AEDPA requires each petitioner to exhaust those state remedies before bringing a federal habeas petition. 28 U.S.C. § 2254(b)(1). While there was a time when respondent's failure to raise the exhaustion issue would have constituted a waiver, Demarest v. Price, 130 F.3d 922, 934 (10th Cir. 1997), AEDPA mandates exhaustion of state remedies

unless the respondent expressly waives that requirement.  28 U.S.C. § 2254(b)(3); see also Ellis v. Hargett, 302 F.3d 1182, 1189 (10th Cir. 2002).  In this case, respondent asserts that petitioner has exhausted his first two claims and has procedurally defaulted his last claim.  Petitioner's claims will be addressed in turn.

B.  GROUND ONE - ADMISSION OF PRIOR CONVICTION

Petitioner alleges that his "conviction was obtained through the admission of a prior constitutionally infirm uncounseled conviction" in violation of his constitutional rights.  (Doc. 2 at 4.)  In this regard, petitioner appears to be challenging the evidentiary ruling by the trial court that admitted evidence of the circumstances surrounding petitioner's prior conviction in case number 86-CR-717 as evidence in case number 99-CR-191 of petitioner's knowledge that he was possessing narcotics.[2]

Although respondent does not address the issue, it is not clear to the court that this claim has been addressed by the Kansas courts.[3] In the decision on petitioner's state collateral appeal, the Kansas Court of Appeals stated:

Finally, Graham claims the district court

_____

[2]  In his memorandum supporting his petition, petitioner also appeared to be alleging ineffective assistance of appellate counsel in failing to pursue this argument on direct appeal.  (Doc. 2 at 4.) Petitioner's traverse, however, makes clear that petitioner is only challenging the admission of evidence by the trial court.  (Doc. 12 at 12)(stating that "[t]he challenge forwarded in the instant matter is that the tainted - constitutionally infirm, uncoun[s]eled - coerced prior Arkansas conviction was admitted as evidence to establish guilt in case no. 99-CR-191" in violation of Burgett v. Texas, 389 U.S. 115 (1967), abrogated on other grounds by Parke v. Raley, 506 U.S. 20, 31 (1992)).

[3]  Respondent also does not address the issue of procedural default on this claim.

erred in denying his motion to set aside the
convictions in 99 CR 191.  In 99 CR 191, Graham
was convicted of possession of methamphetamine
after two prior convictions, a drug severity
level 1 offense.  Graham's convictions in 86 CR
717 constituted the two prior convictions.
Graham argues that his convictions in 86 CR 717
were constitutionally invalid and therefore those
convictions could not be admitted as evidence in
99 CR 191.

Graham failed to raise this specific issue
in his direct appeal of the 99 CR 191 convictions
in Graham, 273 Kan. 844.  He fails to cite
exceptional circumstances as to why the issue was
not raised; accordingly, the issue has been
waived.  In any event, Graham's argument is
without merit because his convictions in 86 CR
717 have been upheld by the Kansas Supreme Court.
For the reasons previously discussed, this issue
should not be revisited.  The district court did
not err in denying this requested relief.

Graham v. State, No. 94,007 (Mar. 10, 2006).  Therefore, it appears

the Kansas Court of Appeals has addressed the admission of case number

86-CR-717 as evidence in case number 99-CR-191.  Here, however, at

first blush, petitioner seems to be challenging the admission of his

Arkansas conviction as evidence in case number 99-CR-191.

As a result, the court looks to case number 99-CR-191 to see if

petitioner's Arkansas conviction was, in fact, admitted into evidence

in that case.  Upon examining the record, it is clear the Arkansas

conviction itself was not admitted into evidence in case number 99-CR-

191.  The court concludes petitioner must be referring to the

introduction into evidence the circumstances of case number 86-CR-717

and will construe petitioner's arguments accordingly.  See Cummings

v. Evans, 161 F.3d 610 (10th Cir. 1998)(stating that in determining

whether petitioner presents valid federal claims, the court should

liberally construe pro se filings).  The court construes petitioner's

argument to be that because case number 86-CR-717 relied on the

Arkansas conviction (in which petitioner contends he was unconstitutionally convicted), the evidence from the 86-CR-717 conviction should not have been admitted into evidence in case number 99-CR-191 because it was prejudicial.

Thus, petitioner is challenging the trial court's evidentiary ruling.[4] A federal habeas court, however, may not grant relief based on a state court's alleged error in applying its own law absent a finding that the state court's ruling was so arbitrary and capricious as to constitute an independent constitutional violation. <u>Fields v. Gibson</u>, 277 F.3d 1203, 1220 (10th Cir. 2002) (citing <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)).

The Tenth Circuit has provided the following guidance when reviewing state evidentiary rulings in a habeas case brought under 28 U.S.C. § 2254:

> We may not provide habeas corpus relief on the basis of state court evidentiary rulings "unless they rendered the trial <u>so fundamentally unfair that a denial of constitutional rights results</u>." <u>Mayes v. Gibson</u>, 210 F.3d 1284, 1293 (10th Cir.), cert. denied, 531 U.S. 1020, 121 S.Ct. 586, 148 L.Ed.2d 501 (2000). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint."

<u>United States v. Rivera</u>, 900 F.2d 1462, 1477 (10th Cir. 1990) (emphasis added).

---

[4]  If petitioner is challenging whether his 99-CR-191 sentence was enhanced by an allegedly unconstitutional sentence in 86-CR-717, this argument is precluded by <u>Lackawanna County Dist. Att'y v. Coss</u>, 532 U.S. 394 (2001). <u>See</u> <u>Davis v. Roberts</u>, 425 F.3d 830, 864-36 (10th Cir. 2005) (discussing the <u>Lackawanna</u> rule (prohibiting a challenge to the use of a conclusively valid prior conviction as a sentence enhancement) and its exceptions).

Petitioner's assertions regarding the admission of the evidence do not rise to the level of rendering his trial fundamentally unfair. The evidence that was admitted was that at the previous trial (for case number 86-CR-717), petitioner defended himself on narcotics possession charges by arguing that the clothes in which the narcotics were found in did not belong to him. (Transcript of August 4, 1999 court trial at 92-93.) There was also testimony that at this previous trial (case number 86-CR-717), evidence had been admitted that he had used the same defense before (i.e., at the Arkansas proceeding)--the defense that the clothes the drugs were found in were not petitioner's clothes. (<u>Id.</u> at 94.) In his trial (case number 99-CR-191), petitioner again argued that the clothes in which the narcotics were found did not belong to him. (Transcript of August 4, 1999 court trial at 259, 261-62, 270-71.)

The fact that the conviction and sentence in case number 86-CR-717 relied on the challenged Arkansas conviction has nothing to do with the evidence admitted. The Arkansas conviction itself was not the subject of the testimony. Rather, it was the fact that petitioner had used the defense of "the clothes weren't mine" in two previous trials. Because petitioner was using the same defense in his current trial, the evidence did not make his trial fundamentally unfair. The evidence admitted related to petitioner's knowledge of possession, not to his criminal history or prior convictions. The trial court's admission of this evidence did not render petitioner's trial fundamentally unfair and petitioner's application for habeas corpus relief on this ground is DENIED.

C.   GROUND TWO - DENIAL OF LEGAL REPRESENTATION AT CRITICAL STAGES

        Petitioner next argues that he "was denied legal representation at critical stages of trial proceedings" because he supposedly did not have legal representation during a hearing on his <u>pro se</u> motion to withdraw his plea agreement. (Doc. 2 at 7-9.)  Petitioner raised this argument in his § 60-1507 appeal.  When discussing this claim, the Kansas Court of Appeals stated:

> On September 13, 1999, in 99 CR 191, Graham pled no contest to one count of possession of marijuana.  In exchange for his plea, the State agreed to dismiss the remaining charges, including one count of possession of methamphetamine.  On October 1, 1999, Graham filed a pro se motion to withdraw his plea and dismiss his counsel.  Counsel was present at this hearing and stated that he was available to assist Graham 'in any way that I can.'  The district court informed Graham that by withdrawing his plea, all plea agreements were off the table.  The district court also informed Graham of the maximum sentence he would be facing once the original charges were reinstated.  Graham stated that he still wished to withdraw his plea.  The district court sustained the motion.
>     . . .
> Graham argues that he was not represented at a critical point in the trial proceedings, which was the motion to withdraw the plea.  However, even though Graham filed a motion to dismiss counsel, his counsel was still present at the hearing and expressed the willingness to aid Graham in any way that he could.  Graham had counsel available to him, but he chose to proceed pro se.  Further, the district court made sure that Graham realized that he was giving up his right to the plea agreement and the possible penalty that he was facing if the charges were reinstated.

The Kansas Court of Appeals determined there was "no evidence or indication that Graham was denied his right to counsel before withdrawing his plea." <u>Graham v. State</u>, No. 94,007 (Kan. Ct. App.

Mar. 10, 2006).

The Sixth Amendment affords an accused the right to counsel at all critical stages of the criminal process. Iowa v. Tovar, 541 U.S. 77, 80 (2004). A plea hearing qualifies as a critical stage. Id. at 87. "That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." Strickland, 466 U.S. at 685. Thus, "the right to counsel is the right to the effective assistance of counsel." Id. at 686.

Petitioner does not contest that his stand-by counsel, John Johnson, was physically present and available to him at the hearing on petitioner's pro se motion to withdraw his plea agreement. The record shows the hearing opened with the prosecutor's statement that he would agree to petitioner withdrawing his plea. The prosecutor then asked that if the court allowed petitioner to withdraw his plea, the original complaint be reinstated. Petitioner's attorney then stated he was there to assist petitioner in any way he could and that the motion to withdraw the plea spoke for itself. Mr. Johnson also stated that the motion made it obvious that petitioner did not want him, Mr. Johnson, to continue to represent him. The court agreed and then addressed petitioner directly. The court advised petitioner that if he was allowed to withdraw his plea, he would be "facing as much as 204 months" on the first charged count with an additional "up to 20 months" on the second count, to run consecutive to his current

-13-

fifteen years to life sentence. Petitioner indicated he understood and the court allowed petitioner to withdraw his plea. (Transcript of October 22, 1999 motion hearing at 2-4.)

Petitioner seems to think that because withdrawing his plea agreement ended up putting him in a less favorable position after he went through a trial, the court should have not let him withdraw the plea. Petitioner states in his traverse: "scrutiny should have been extended to withdrawing this plea especially since a 17-month plea turned into a 150-month sentence. The record reveals that counsel extended no advice at this proceeding or that the advice was so erroneous as to constitute negligence." Apparently, petitioner believes his stand-by counsel should have somehow been able to forecast the result of the trial and advise him of the end result at the time petitioner's <u>pro se</u> motion to withdraw the plea was being heard. Because this did not happen, petitioner considers himself to have been deprived of representation at that stage of the proceedings.

Federal precedent requires states to afford criminal defendants the right to counsel at critical stages of the proceedings against them. This occurred here. Counsel was present and willing to advise, but petitioner wanted to represent himself. Petitioner <u>was</u> advised by the court of the consequences of withdrawing his plea. The Kansas Court of Appeals' determination that petitioner was not deprived of the right to counsel at a critical stage of the proceedings against him was not contrary to the clearly established federal precedent. Petitioner's application for a writ of habeas corpus on this ground

is DENIED.[5]

D.  GROUND THREE - DEFECTIVE COMPLAINT

In his final claim, petitioner argues that "the trial court lacked jurisdiction due to a defective complaint." (Doc. 2 at 9.) Petitioner asserts that he was not arraigned before the trial judge on all the charges for which he was tried before that judge and as a result he suffered a "violation of Due Process and other substantial Constitutional rights." (Doc. 6 at 6.)  In his K.S.A. § 60-1507 motion before the state court, petitioner alleged the original charges against him were never reinstated, he was convicted upon charges not made, and therefore he was denied due process.

In response to this claim, the Kansas Court of Appeals stated:

> Graham also argues that the original charges in 99 CR 191 were never properly reinstated after the plea was withdrawn.  Graham fails to provide justification for failing to raise this issue on direct appeal; he also fails to argue that the error affected constitutional rights coupled with exceptional circumstances in failing to raise the issue in his direct appeal.  Therefore, this issue has been waived by Graham.  See Neer, 247 Kan. at 140-41.
> In any event, the record reflects that the original charges in 99 CR 191 were properly reinstated.  At the hearing to withdraw the plea, the State noted that it did not have an objection to the withdrawal, but it specifically asked that

---

[5]  It would appear that petitioner may have been allowed a form of "hybrid representation" in state court, i.e., even though his counsel withdrew at petitioner's request, counsel still addressed the court on petitioner's behalf.  Whether or not that occurred, petitioner cannot claim ineffective assistance of counsel because he represented himself on the critical decision to withdraw his plea. Therefore, even if the issue of effective representation was before the court, petitioner would have to claim that his self-representation was ineffective, hardly a persuasive argument.

There is no constitutional or statutory right of "hybrid representation" recognized in federal courts.  United States v. Chavis, 461 F.3d 1201, 1205-06 (10th Cir. 2006).

-15-

> the original complaint be reinstated. The
> district court responded by stating, 'Okay.'
> Graham knew that the original charges were being
> reinstated because he agreed to the possible
> sentence he was facing on the original charges.
> The original charges were properly reinstated,
> and the district court had jurisdiction to
> convict Graham of possession of methamphetamine.

Graham v. State, No. 94,007 (Kan. Ct. App. Mar. 10, 2006). Respondent argues that petitioner's final claim has been procedurally defaulted by petitioner and is therefore not reviewable by this court. (Doc. 10 at 17.)

When a federal habeas petitioner's claim has been defaulted in state court on an independent and adequate state ground, federal habeas courts will not generally address the issue. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Klein v. Neal, 45 F.3d 1395, 1397 (10th Cir. 1995) ("It is now beyond cavil that the adequate and independent state ground doctrine is fully applicable to federal court review of habeas corpus petitions."). "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision. For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims." Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998). Under those circumstances, a federal habeas court will only consider a claim if the petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998).

The Kansas Court of Appeals relied on the case of State v. Neer, 247 Kan. 137, 795 P.2d 362 (1990), when it found petitioner had waived his right to raise this issue. In Neer, the Kansas Supreme Court

-16-

stated:

> Under Kansas law, where an appeal is taken from a sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those issues that could have been presented, but were not presented, are deemed waived.  Where a defendant's claim has not been raised at trial or on direct appeal, such a default prevents the defendant from raising the claim in a second appeal or a collateral proceeding.

Neer, 247 Kan. at 140-41.  It is clear that the Kansas Court of Appeals determined this issue adversely to petitioner on an independent state ground.  The court's decision was based on the Kansas precedent refusing to hear issues on collateral appeal that have not been previously addressed.  The Court considered no federal precedent of any kind in reaching its determination.  The Court's determination is also adequate because it is a regularly followed, evenly applied Kansas statute.  See, e.g., Drach v. Bruce, 281 Kan. 1058, 136 P.3d 390, 405 (2006); State v. Johnson, 269 Kan. 594, 601, 7 P.3d 294, 299 (2000).  Petitioner concedes this issue was not raised at trial or on direct appeal.  Thus, the Kansas Court of Appeals relied on an independent and adequate state ground in finding petitioner's claim was not reviewable in a collateral proceeding.

Therefore, petitioner's claim is procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.  Cause for default must be some objective factor, external to petitioner and his counsel, "something that cannot fairly be attributed to [them]."  Id. at 753. "Examples of such objective factors include a showing that the factual

-17-

or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995)(internal quotations and citations omitted).

To establish cause for failing to raise the issue at trial, petitioner alleges he had limited access to legal materials before his trial and he was thus unaware of the existence of the legal issue before his trial (in which he represented himself pro se). Petitioner states: "at the beginning of trial proceedings petitioner informed the trial court that due to limited access to legal materials he was unprepared to proceed, however, this argument was disregarded."  To establish cause for failing to raise this issue on direct appeal, petitioner alleges his appellate counsel was ineffective for failing to raise the claim.  (Doc. 12 at 5.)

Interference by officials which makes compliance impracticable can be cause for procedural default.  However, petitioner fails to support his statement that cause existed due to obstruction from legal materials with facts showing how his access to legal materials was limited.  Upon review of the record, it is clear that petitioner's contention is unsupportable.  At a hearing on July 19, 2000, the trial court addressed the issue of petitioner's access to legal materials. The court asked petitioner to prepare an order for the court to sign that would lift a previous detainer which would give petitioner eight hours a day of access to the law library until the time of trial. (Transcript of July 19, 2000 proceedings at 8-10.)  Petitioner has not pointed to factual support for his claim that cause for his procedural default exists on this basis.

Ineffective assistance of counsel can also be cause for procedural default, <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). However, the exhaustion doctrine requires "that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." <u>Id.</u> at 489. Petitioner has not raised an ineffective assistance of counsel claim with regard to his appellate counsel's performance in this regard. Moreover, petitioner has neither alleged nor shown prejudice. Because cause <u>and</u> prejudice must be shown, petitioner has not overcome the procedural default.

Finally, a fundamental miscarriage of justice in this context means that the petitioner is probably innocent of the crime. <u>Phillips v. Ferguson</u>, 182 F.3d 769, 774 (10th Cir. 1999). A review of the record shows that while the evidence establishing possession of the narcotics by petitioner was not overwhelming, it was adequate for a trier of fact to find that petitioner knowingly possessed narcotics. Hence, the court finds no fundamental miscarriage of justice. Therefore, this claim of trial by a defective complaint is procedurally defaulted.

Furthermore, even if the merits of petitioner's claim are considered, there is ample evidence showing the original complaint, and thus petitioner's arraignment under that complaint, was reinstated. The prosecutor orally moved for reinstatement at the time petitioner withdrew his guilty plea and the trial court discussed the original charges and potential sentences with petitioner. (Transcript of October 22, 1999 motion hearing at 2-4.) The Kansas Court of Appeals' determination in this same regard was not unreasonable. In

addition, there is no constitutional, due process requirement of arraignment, as long "as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution." Garland v. Washington, 232 U.S. 642, 645 (1914); accord United States v. Hart, 457 F.2d 1087, 1089 (10th Cir. 1972).  Petitioner's application for habeas corpus relief on this ground is DENIED.

## III.   CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus is DENIED and judgment shall be entered accordingly.

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.   No reply shall be filed.   Identical requirements and restrictions shall apply to any application for certificate of appealability or any other submission, however styled, directed to this Memorandum and Order.

IT IS SO ORDERED.

Dated this 15th day of December, 2006, at Wichita, Kansas.


                              S/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE